Thank you. Thank you, Your Honor. May it please the Court, my name is Maris Liss. I represent the petitioners. And I would like to reserve two minutes for rebuttal. Can you hear me okay? Yes, we can. Okay. Thank you. I'm going to tell you in very brief what my three points are that I plan to argue, and then I'm going to go into each point. I'm going to talk about the fact that it was a prejudicial legal error for the Board to make a decision about not having jurisdiction about the economic deprivation issue that warrants remand. I'm going to talk about the fact that the Board has to consider the cumulative effects of all the harms to decide if the cumulative effect rises to the level of persecution, including the economic persecution. And third, I'm going to talk about the failure of the immigration judge to actually take administrative notice of the country report and to fail to consider the documentary evidence about country conditions. Okay, so going to my first issue, which is the exhaustion issue. My favorite standard of review is de novo, of course, because it's police deferential. And something that this Court has jurisdiction over is whether the Board made a decision about its own jurisdiction. And that's a legal question, and therefore there's de novo review on that. And the case that stands for that is Hernandez v. Holder, 738 F. 3rd, 1099, about the de novo standard for review about the Board's determination of its own jurisdiction. Now, in my 28-J letter, I made a list of places where Alvarez exhausted the issue of economic deprivation in writing in their pre-trial brief, in the particular social group statement where it was mentioned six times on one page. And the petitioner even, you know, cited case law, Babala and Hay. And then, you know, of course, the immigration judge also made findings about economic harm. I don't agree with those findings, but they were made. And so, you know, and then the Board knows that the petitioners were raising economic deprivation because they actually made a point in saying, we're not going to reach that thing that you want us to raise because we think that we don't have jurisdiction over that. Well, so counsel, I mean, you have an argument, and you are now outlining an argument, of why the Board was wrong to say that this wasn't exhausted or hadn't been raised before the IJ. But where did you present this argument in your opening brief? So, Your Honor, I'm not sure if you're aware, but I came into this, I'm not affiliated with the Hawley Law Firm, and I just came into this solely for the argument. So I'm kind of stuck with everything that was in the record and all the briefings that came before. But I will say that in petitioning, and honestly, you know, I would not have briefed the case the same way. I tried to submit a reply, of course, because, you know, I really want to help these people, and there was a true legal issue. But I know that the circuit courts always can visit the question of jurisdiction. And in the petitioner's brief, they did talk about the economic deprivation, and I think that that was enough to preserve it. And then, of course, the respondent… Why don't we just, can you just, for the purpose of answering, the answer is it wasn't in the brief. We could waive such a defect if it was truly in the interest of justice, I suppose. But the answer is he lost the job he had. But where does that get to the level that they truly will be deprived, he can't get some other job, it's not impossible. None of that was developed, was it? Well, I think that it was developed that he had to quit his job and leave, that he didn't feel that he could get another job and he would be safe. You know, he still had the knowledge of the streets and the alleys and the local towns. And so even if he took a job as a shoemaker, you know, that doesn't mean that Knights Templar would not want him to be their driver. And I just want to say that, you know, about coming into this case late, you know, I'm on a list with attorneys. And so, you know, Mr. Holley was like wanting to find out how to, you know, tell a court not to do oral argument. And I said, no, no, if the court wants oral argument, it means that there's something really important going on. They will have questions about, I'll be your coach. I will moot you. And, you know, everybody has their first argument, but he has Parkinson's. And so that was why he didn't want to do the argument. And so I said, well, I'll step in and I'll do it, you know, and that happened in a case in January, Archula. And so then he called me, he reached out to me for this case to say, I have another case where, you know, this time I actually did a motion. I said, well, oral argument, it hasn't been ruled on. I think I better like, you know, retain you in case there's going to be arguments. And so, but, you know, I, as part of preparing for oral argument, I had to know every page of the record. Before you're out of time, let me ask you a question. Okay. You're upset that nobody discussed the country conditions report, but doesn't the country conditions report indicate that the Knight Templars have greatly lost their power, that they've diminished, that their leaders have been arrested? I'm not sure how the country conditions report as a whole benefits you. Well, just because it does benefit me because the Knight Templar is still a player and they still need drivers. And they're only going to get bigger if they have more drivers and more workers serving them. So I don't really think that it protects him that, you know, if Knight Templar is 10% smaller or 20% smaller or 50% smaller, he's still in danger. They already know him and they know what his special skill set is. And, you know, the judge particularly said, I'm going to take administrative notice. And I'm going to keep this piece of paper that's the cover sheet in the record. And that's going to be, so when I say in my, you know, decision, you know, that I'm taking administrative notice of a certain document, this will cue the BIA to look at that document so that they can take administrative notice of it. So that's why he kept one, because when I was reading the record, I was like, why is there only one page? I was thinking, oh, do I have to make a motion to Mr. Alexander that the whole country report is written, is missing, and only the front page is there? And then I saw the whole context where, you know, he had an attorney who did not submit the evidence correctly because they didn't paginate it. He didn't follow the rules of the court. And so the judge says, I'm not going to take the country report at all. And then he said, well, can you at least take administrative notice of it? And he's like, well, yeah, I can, but, you know, you can actually submit it at the next hearing. And then at the next hearing, the judge reminded him, oh, do you have that paginated country report? Like I told you to bring next time. And the attorney, you know, said, oh no, I didn't do that. But you'll take administrative notice. Yes, I will. But then he didn't. And, you know, I feel bad for this family because, you know, there was a lot of things that happened that I wouldn't have done if I had the case. And I kind of, I feel a little awkward, you know, in the position of being here like this. But, you know, even, even if, even if the economic deprivation doesn't rise to the level of persecution, what, what, what, what the finder of fact will have to do is in the totality of circumstances do like a math equation, like being threatened that the wife and child will be taken away. That's how they said it, but it means like, I guess, kidnapped or, or murdered. It was definitely a dire threat, you know, A caravan of armed men coming to the personal home of the, of the, you know, where his family was there. So there's all different elements about the level of the threat. And, and then you add to that, the economic deprivation that he has to give up his job and leave. And then I, I, and so, you know, when in pages 14 to 16 of Mr. Alexander's brief, which I asked you to ignore, it's like a string side of, of, of, of cases about economic persecution, but he never talked about the cumulative effect of everything that happened. Okay. Yeah. Thank you. Thank you so much. All right. We'll hear from the government now. May I please record Gerald Alexander for department of justice. So the issue in this case is quite simple. And that's whether the credible testimony presented by the petitioner makes out a case for harm, rising to the level of persecution. And the simple answer to that is that it just doesn't, there were some regrettable actions, you know, obviously what happened to petitioner and her family is not a good thing, but it just does not rise to the level of persecution. And so, you know, the, the threats, it's important to remember that the threats that were made were not made to the petitioner. They were made to her husband who is not a party to this case. So maybe it will be different if the husband were a petitioner here, but he's not. And so it just does not meet that level. Can you address the, you know, the question of economic harm? I mean, because we, you know, the board said, you know, this wasn't raised before the immigration judge, but as you, as you've seen and as you just heard your friend explaining, I mean, it wasn't presented very thoroughly, but it was mentioned there. So what should we do with that statement from the board? Well, first of all, it's arguable. The only relevant place to look for whether the argument was raised is in the brief filed by petitioner to the immigration judge. That's what the board was looking at. And in that brief, there's a very short mention of the legal standard of economic harm. It doesn't explain why there was economic harm here. It does nothing to specify how that broad legal doctrine affects this case. And so it's arguable whether that preserve the issue for appeal, but if it did again, the merits of it are simply that they haven't made out a case of economic harm. What the testimony shows that petitioner's husband was able to continue working as a cab driver until members of the gang came to his home, threatened him in a way that he found to be credible. And then they left the country almost immediately thereafter. So this gentleman was working as a taxi driver. He testified that they were threatening him for four years and asking him to work for the gang, but they never did anything. And he did not testify that he couldn't work as a taxi driver. He testified that, yeah, well, sometimes while I was driving, they would flag me down and say, Hey, you should be working for us. And if you don't, we're going to do something to you, but they didn't do anything to him. They didn't do anything to his family and he continued to work. Maybe that's right on the merits, but do you think we can consider that when the board didn't make any decisions? I think, I think that there's two different questions here. One is, did they preserve the argument on appeal? And we say, no, the board was correct in saying, yeah, you know, that brief mention does not, that doesn't preserve the argument on appeal. So that's, that's 0.1. Point two is if, if you determine that the board was wrong about that, then it's harmless error because on the merits of the thing, it's clear that there is not a prima facie claim of economic harm. And so the remedy that petitioners are seeking is remand. Well, remand would be futile because they can't make out the claim. All the remand would do would be for the board to look at the evidence that's already in the record on that point. And that evidence doesn't amount to anything. So if the board was wrong, it's harmless error. Unless the court has any other questions, we submit the case on our brief. All right. Thank you, counsel. Oh, may I start? Yeah, please. Okay. First of all, you know, it happens that the case that I argued in November, our Sheila was a person who the persecutor bar was imposed on them. And all he did was talk to people. It actually, even though he never touched anybody, he never physically abused anybody. He never threatened anybody. All he did was talk to people and he collected names. Now he gave over those names to other people and other people, you know, made those people disappear. Okay. But, um, you know, the fact that, um, Mr. Alexander is saying that nothing happens when an armed caravan of people coming to your personal home, your personal space, when your wife and child was there is not, is definitely constitute, you know, harm. And I believe it rises to the level of persecution the same way, you know, when my other client was just talking to people and the persecutor bar was imposed on him and he never did anything to anybody. Um, but also about the end of one other very short thing about the indirect threat. Um, indirect was it was told to Moises, but Tanya was there and hearing it, she eavesdropped it and also the child ran outside and the mother had to come and get the baby. And, uh, and so, you know, when they say it was big and indirect, they don't meant that it was like an indirect threat, like, you know, like something about a third cousin or two people, you know, somebody twice removed. I mean, it was, it was in the presence of the wife and child at their personal home. Um, and that's what indirect means. Indirect does not minimize it. Okay. Thank you counsel. We thank both counsel for their helpful arguments and the case just argued is submitted. Thank you. We'll hear argument next this morning in, uh, social technologies LLC against Apple link. I'm Dutch Miller. I need to take two minutes to get a roofer off my roof. Oh, okay. We'll, uh, we'll take a two minute break for that. This court stands in recess for two minutes.
judges: Hawkins, Restani, Miller